United States District Court
Southern District of Texas

**ENTERED**

March 27, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANN AND MARK LEANDER,<br>    Plaintiffs, | §<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. 17-2586 |
| U.S. BANK, NATIONAL ASSOCIATION,<br>AS TRUSTEE FOR ASSET BACKED<br>SECURITIES CORPORATION HOME<br>EQUITY TRUST, SERIES 2005-HE2,<br>ASSET BACKED PASS-THROUGH<br>CERTIFICATES, SERIES 2005-HE2, and<br>OCWEN LOAN SERVICING, LLC, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
|     Defendants. | §<br>§ | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge for a memorandum and recommendation is Defendants' Motion for Summary Judgment (Document No. 13). Having considered the motion, the response and additional briefing (Document Nos. 16 & 18), Plaintiffs' claims, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below that Defendants' Motion for Summary Judgment (Document No. 13) be GRANTED.

## I.    Background

This is a mortgage/foreclosure case, which was filed by Plaintiffs Ann and Mark Leander ("the Leanders") in state court on July 20, 2017, against U.S. Bank and Ocwen Loan Servicing, LLC (collectively "Defendants"), seeking to prevent foreclosure and render void the home equity loan on their residence, located at 3207 Cinco Lakes Dr., Katy, Texas 77450 (referred to hereafter as "the

Property").  The case was timely removed to this Court on the basis of diversity.

In the Petition they filed in state court, the Leanders assert claims against Defendants for: (1) a determination that the lien on the Property is unenforceable given the expiration of the statute of limitations; (2) breach of contract; (3) violations of the Texas Constitution; (4) to remove cloud and quiet title to the Property; and (5) declaratory relief.   In their Motion for Summary Judgment, Defendants maintain that summary judgment is warranted on all of the Leanders' claims because the statute of limitations has not run on their ability to enforce the lien on the Property, and because the Leanders' complaints about the origination of the loan and any defects associated therewith are both time-barred and refuted by the summary judgment evidence.

## II.    Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548.  Instead, "the nonmoving party

2

must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

## III.    Discussion

### A.    Statute of Limitations

In their first claim, titled "Statute-of-Limitations Bars any suit seeking authority to foreclose," and "Statute-of-Limitations Bars any Power of Sale," the Leanders allege that U.S. Bank "accelerated the debt on [the] Property in August 2010 when it filed its Application for Foreclosure. However, U.S. Bank did not file its most recent application to foreclose until January 2015, *after* the four-year statute of limitations [had] expired." Document No. 1-4 at 5.  Defendants, in their Motion for Summary Judgment, argue that summary judgment is warranted on the Leanders' statute of limitations claim because the acceleration of the debt was abandoned by virtue of subsequent Notices of Default, which sought less than the full amount due, and operated to re-set the statute of limitations.

Section 16.035 of the Texas Civil Practice and Remedies Code, which governs foreclosure proceedings on a real property lien, provides for a four year statute of limitations, as follows:

> A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues. . . . On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.

For a note with an optional acceleration clause, a cause of action accrues under § 16.035 when the "holder actually exercises its option to accelerate" by providing first a notice of intent to accelerate and then a notice of acceleration. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566

(Tex. 2001). But, "[a] note holder who exercises its option to accelerate may 'abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity.'" *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.–Houston [1st Dist. 2012, no pet.) (quoting *Holy Cross*, 44 S.W.3d at 566-67). Acceleration may also "be abandoned by agreement or other action of the parties," with there being no requirement of a written agreement. *Khan*, 371 S.W.3d at 353, 356; *see also Clawson v. GMAC Mortgage, LLC*, No. 3:12-CV-00212, 2013 WL 1948128 * 4 (S.D. Tex. May 9, 2013) (Texas law "does not preclude a note holder from abandoning acceleration without express agreement from the borrower."). In addition, abandonment may be unilateral and far from express. "For example, a lender may abandon acceleration by sending new notices of default and intent to accelerate demanding less than the full balance of the loan." *Curry v. Ocwen Loan Servicing, LLC*, Civil Action No. H-15-3089, 2016 WL 3920375 * 5 (S.D. Tex. July 14, 2015) (Lake, J.) (citing *Leonard v. Ocwen Loan Servicing, Inc.*, Civ. Action No. H-13-3019, 2014 WL 4161769 at *4-5 (S.D. Tex. Aug. 19, 2014) (*Leonard I*), aff'd, *Leonard II*, 616 F. App'x 677; *Boren v. U.S. Bank Nat'l Assoc.*, Civ. Action No. H-13-2160, 2014 WL 5486100 at *1-2 (S.D. Tex. Oct. 29, 2014), aff'd, 807 F.3d 99 (5th Cir. 2015)). When abandonment of acceleration occurs, "the statute of limitations period under § 16.035(a) cease[s] to run . . . and a new limitations period [ ] begins." *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015).

Here, the summary judgment evidence shows that U.S. Bank, National Association, as Trustee for Asset Backed Securities Corporation Home Equity Loan Trust, Series 2005-HE2, filed an Application for Order of Foreclosure in the 268th District Court of Fort Bend County, Texas, on August 25, 2010. (Document No. 13-9). On October 4, 2012, before that state court action was

4

dismissed without prejudice for want of prosecution, a Notice of Default was sent to the Leanders advising them that they were in default and setting forth the amount they would have to pay to bring their loan current (Document No. 13-1 at 16).  Two years later, on November 4, 2014, a subsequent Notice of Default was sent to the Leanders advising them that the loan was in default and setting forth the amount they would have to pay to bring the loan current (Document No. 13-2 at 8).  Those two Notices of Default operated as an abandonment of the prior acceleration of the Note, an abandonment of the foreclosure proceeding, and a re-setting the four year statue of limitations under § 16.035 of the Texas Civil Practice and Remedies Code. *See Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015) ("U.S. Bank's Second Notice of Default informed the Borens that the total amount necessary to bring their loan current was the amount due under the original terms of the Note and that the bank would accelerate the maturity date of the loan if the Borens failed to pay this amount. This notice unequivocally manifested an intent to abandon the previous acceleration and provided the Borens with an opportunity to avoid foreclosure if they cured their arrearage. As a result, the statute of limitations period under § 16.035(a) ceased to run at that point and a new limitations period did not begin to accrue until the Borens defaulted again and U.S. Bank exercised its right to accelerate thereafter."); *Martin v. Federal Nat'l Mortgage Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016) ("As is relevant here, the request for payment of less than the full obligation – after initially accelerating the entire obligation – was an unequivocal expression of the bank's intent to abandon or waive its initial acceleration."); *Alvarado v. U.S. Bank Nat'l Ass'n*, 652 F.App'x 305, 307 (5th Cir. 2016) ("Because U.S. Bank sent Alvarado 'account statements listing less than the full accelerated debt, as well as notices of default and acceleration, after the October 2008 acceleration' the district court did not err in granting summary judgment for U.S. Bank."); *Alcala v. Deutsche*

5

*Bank Nat'l Trust Co.*, Civil Action No. H-15-3627, 2016 WL 4363403 *3 (S.D. Tex. Aug. 15, 2016) (Miller, J.) ("when Deutsche Bank sent a notice of default on September 11, 2012 , requesting payment of only the amount overdue under the note rather than the full balance of the note, Deutsche Bank effectively rescinded its prior acceleration, and the accrual date reverted to the loan's original maturity date."). Given that re-setting of the limitations period under § 16.035 of the Texas Civil Practice and Remedies Code, the statute of limitation has not run on Defendants' ability to enforce the lien on the Property. Defendants are therefore entitled to summary judgment on the Leanders' statute of limitations claim.

### B.    Breach of Contract Claim

In support of their breach of contract claim, the Leanders allege that Defendant(s) failed to strictly comply with the "provisions of the Texas Constitution applicable to Extension of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution" and failed to cure the defects once they were provided notice of them. (Document No. 1-4 at 7). The defects, according to the Leanders, include: (1) the failure to provide them with notice that the loan was governed by the Texas Constitution; (2) the absence of an acknowledgment, signed by both the borrower and the lender, of the fair market value of the property; and (3) the charging of lender fees that exceeded 3% of the loan. Defendants argue in their Motion for Summary Judgment that summary judgment is warranted on the Leanders' breach of contract claim(s) because the Leanders either knew or should have known of their claim(s) when the loan was entered into – in December 2004, and, as such, their breach of contract claim(s) is barred by the four year statute of limitations for breach of contract claims. Additionally and alternatively, Defendants maintain that the summary judgment evidence shows that the Leanders *were* provided with notice that the loan was governed by the Texas

Constitution, that there *was* an acknowledgment of the fair market value of the Property, and that the actual lender fees that were charged did not exceed 3% of the note.

Breach of contract claims premised on violations of the Texas Constitution are governed by a four year statute of limitations, that accrues at the time of the alleged violations. *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 603 (5th Cir. 2017). Here, that means that the Leanders' breach of contract claim(s) accrued at the time the loan originated – in 2007 – because it was at that time that the Leanders either knew, or could have discovered, the alleged constitutional violations. *See id.* With their breach of contract claims accruing in 2007, the statute of limitation on those claims expired four years later, in 2011 – over five years before this case was filed. The Leanders' breach of contract claims, premised on alleged violations of the Texas Constitution, are therefore time-barred. *Rodriguez v. Deutsche Bank Nat'l Trust Co.*, Civil Action No. H-16-1597, 2017 WL 4890023 *3-4 (S.D. Tex. Oct. 30, 2017) ((finding breach of contract claim premised on violations of the Texas Constitution to be time-barred).

Moreover, even if the claims were timely, Defendants are entitled to summary judgment on those claims based on the uncontroverted summary judgment evidence in the record. First, the uncontroverted summary judgment evidence shows that the Leanders were given, and signed on December 3, 2004, a "Notice Concerning Extensions of Credit," which gave them notice that their loan was subject to section 50(a)(g), Article XVI of the Texas Constitution (Document No. 13-1 at 21); that the Leanders signed, on December 21, 2004, a "Affidavit of Fair Market Value of Homestead Property," which set the fair market value of the Property at $305,000 (Document No. 13-1 at 24), making the loan amount of $244,000 no more than 80% of the fair market value of the Property, as was required by Section 50(a)(6)(B), Article XVI of the Texas Constitution ("is of a

principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made"); and that when the 2% loan discount fee is excluded, along with the fees the lender paid or gave the Leanders credit for at closing (Document Nos. 13-1 at 26-28; 13-1 at 30), the Leanders paid less than 3% of the loan value in lender fees, in compliance with Section 50(a)(6)(E), Article XVI of the of the Texas Constitution.[1]

In response to Defendants' Motion for Summary Judgment, the Leanders attempt to raise a genuine issue of material fact by arguing that Defendants have not shown that the "discount" fees they paid were really discount fees, as opposed to additional lender fees, and that the fair market

---

[1] At the time the loan originated in 2007, Section 50(a)(6)(E) provided that "The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for" an extension of credit that "does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit."

Effective January 1, 2018, Section 50(a)(6)(E) now provides that "The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for" an extension of credit that

(E) does not require the owner or the owner's spouse to pay, in addition to any interest or any bona fide discount points used to buy down the interest rate, any fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, two percent of the original principal amount of the extension of credit, excluding fees for:
(i) an appraisal performed by a third party appraiser;
(ii) a property survey performed by a state registered or licensed surveyor;
(iii) a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law; or
(iv) a title examination report if its cost is less than the state base premium for a mortgagee policy of title insurance without endorsements established in accordance with state law.

value acknowledgment they signed was not signed by the lender until several days later. Neither argument raises a genuine issue of material fact given the uncontroverted documentary evidence in the record. The settlement statement provided to the Leanders at closing provided for, in item 802, a loan discount of 2% of the loan value ($4,880.00), which was to be paid from borrower's funds at settlement. (Document No. 13-1 at 27). In addition, the Leanders signed a separate "acknowledgment," acknowledging that they were "electing to pay discount point(s) in [the] extension of credit in order to obtain a lesser interest rate" and that those "discount point(s) are 'interest' in accordance with Section 50(a)(6)(E), Article XVI, of the Texas Constitution and are excluded from the 3% limit on fees required by the Lender from the Borrower(s) and non-borrowing owner(s), if any, to originate, evaluate, maintain, record, insure, or service the extension of credit." (Document No. 13-1 at 30). Given the settlement statement, which shows that the Leanders were paying a 2% discount rate, totaling $4,880.00, along with the acknowledgment they signed that the discount rate was "in order to obtain a lesser interest rate," the uncontroverted summary judgment evidence defeats the Leanders' breach of contract claim premised on their allegation that they were charged lender fees that exceeded 3% the loan value. *See Cerda v. 2004-EQR1 LLC*, 612 F.3d 781, 796 (5th Cir. 2010) (discount points that lower a borrower's interest rate are considered interest, not fees, and are not included in the calculation of the allowable fees under Section 50(a)(6)(E), Article XVI of the Texas Constitution); *see also e.g. Nguyen v. Bank of America*, N.A., Civil Action No. H-12-2011, 2013 WL 12107662 *2-3 (S.D. Tex. May 3, 2013) (rejecting borrower's claim, in light of their "Discount Point Acknowledgment," that the amount they paid for discount points should be

9

included in the 3% limit on fees under Section 50(a)(6)(E)).[2]

As for their breach of contract claim premised on the allegation that there was not an effective acknowledgment of the fair market value of the property that complied with Section 50(a)(6)(Q)(ix) of the Texas Constitution (requiring that "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made"), the summary judgment evidence in the record shows that the Leanders signed an acknowledgment of fair market value on December 21, 2004, and the Lender signed that same form on December 27, 2004, the date the funds were disbursed. The Leanders point to no authority, statutory or otherwise, and no summary judgment evidence that would render this acknowledgment ineffective or raise a genuine issue of material fact on their breach of contract claim.

In all, the summary judgment evidence in the record shows that the Leanders either knew or should have known about the alleged violations of the Texas Constitution at the time they entered into the home equity loan at issue in this case in 2004, and that their breach of contract complaints at this late date are time-barred. In addition, the summary judgment evidence in the record shows that there is no substantive merit to any of the Leanders' breach of contract claims. Accordingly, Defendants are entitled to summary judgment on the Leanders' breach of contract/Texas Constitution

---

[2] The Leanders allege in their state court petition that the fees on the loan equaled or exceeded $15,153.50. Included in that amount, however, was $4,880.00 in loan discount fees, $2,874.10 in fees that were paid by the lender (appraiser fees: $275.00; settlement/closing fees: $400.00; title insurance fees: $1,936.90; recording fees: $125.00; REFI fee: $75.00; and tax certificate fee: $62.30), $874.40 in interest and insurance costs, and $795.00 in homeowner's maintenance fees. When these amount are properly excluded, the lender fees paid by the Leanders come nowhere near the 3% cap on lender fees provided for by Section 50(a)(6)(E) of the Texas Constitution.

claims.

### C.    Texas Constitution Claim(s)

The Leanders also allege, as separate claims under the Texas Constitution, that the lender fees charged were in excess of 3% of the Note, in violation of § 50(a)(6)(E), Article XVI, of the Texas Constitution.  But, for the same reasons set forth above, based on the uncontroverted summary judgment evidence that the Leanders agreed to pay $4880.00 in discount points in order to obtain an lower interest rate, and that the Leanders received all the notice and acknowledgment they were due, Defendants are entitled to summary judgment on the Leanders' claims under the Texas Constitution.

### D.    Remove Cloud and Quiet Title Claims

In support of their claims to remove cloud and to quiet title, the Leanders allege that "[t]he Note and Deed of Trust upon which the Defendant asserts an interest, although facially valid, is in fact *invalid* and of no force or effect because Defendants' uncured constitutional violations have rendered Defendants['] underlying lien void *ab initio*.  Thus, Defendants['] claim interferes with Plaintiffs' title."  Document No. 1-4 at 10.   Because, as set forth above, that alleged basis for the Leanders' claims to remove cloud and quiet title is refuted by the uncontroverted summary judgment evidence in the record, summary judgment is warranted, as well, on the Leanders' claim(s) to remove cloud and quiet title.[3][4]

---

[3] "A suit to clear or quiet title-also known as suit to remove cloud from title-relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The cause of action, which is an equitable one under Texas law, "exists 'to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Thomson v. Locke*, 66 Tex. 383, 1 S.W. 112, 115 (1886)). The elements of a quiet title claim

### E.    Declaratory Relief Claim(s)

The Leanders seek, with their declaratory judgment claim, a declaration that the note is void based on Defendants' alleged violations of the Texas Constitution. Again, the for the reasons set forth above, there is no substantive merit to the Leanders' claims that Defendants violated provisions of the Texas Constitution in connection with the loan origination. As such, the Leanders cannot maintain a declaratory judgment claim based on those same allegations.

A declaratory judgment claim cannot stand alone; instead, the "Texas Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 *et seq.* (Vernon 1986), is merely a procedural device; it does not create any substantive rights or causes of action." *Sid Richardson*

---

include: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *U.S. Nat. Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *7 (Tex. App.—Houston [1st Dist.] 2011, no pet.). At its most basic, however, "the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Id.* A plaintiff can only recover on a quiet title claim by establishing the strength of his own title; attacking the weakness of the defendant's title will not suffice. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.) ("A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not on the weakness of his adversary's title.").

Here, because the Landers have come forth with no summary judgment evidence that would support a determination that they have a superior title to the Property by virtue of some non-compliance with section 50(a) of the Texas Constitution, there is no genuine issue of material fact for trial on the Leanders' claim to remove cloud/quiet title to the Property.

[4] In contrast to the Leanders' breach of contract claims, which are subject to dismissal both because they are time barred and refuted by the summary judgment evidence, the Leanders' quiet title claim is not time barred, *see Alexander*, 867 F.3d at 600–604 (distinguishing between a breach of contract claim premised on violations of section 50(a) that are subject to a four year statute of limitations, and quiet title claims premised on violations of section 50(a) which are not subject to a statute of limitations), but is, as set forth above, subject to dismissal based on the uncontroverted summary judgment evidence in the record that the Leanders were provided notice that the loan was governed by the Texas Constitution, there was an acknowledgment signed by both the Leanders and the lender as to the fair market value of the Property, with the loan being no more than 80% of that stated fair market value, and the lender fees charged did not exceed 3% of the loan.

12

*Carbon & Gasoline Co. v. Interenergy Res., Ltd.* 99 F.3d 746, 752 n. 3 (5th Cir. 1996). Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive. *Ayers v. Aurora Loan Services, L.L.C.*, 787 F.Supp.2d 451, 457 (E.D. Tex. 2011) (dismissing claim for declaratory judgment where all underlying substantive claims had been dismissed); *Valdez v. Federal Home Loan Mortgage Corp.*, 2011 WL 7068386 *3 (N.D. Tex. 2011) (where Plaintiff failed to state a claim for trespass to try title and to quiet title, Plaintiff's claims for declaratory and injunctive relief were also subject to dismissal under Rule 12(b)(6)); *James v. Wells Fargo Bank, N.A.*, 2012 WL 778510 *4 (N.D. Tex. 2012) (dismissing claim for declaratory relief where the "arguments for declaratory relief are unsupported by the facts alleged"). Here, given that Defendants are entitled to summary judgment on the Leanders' underlying, substantive claims, the Leanders' claim for declaratory relief is subject to dismissal as well. *See e.g. Campo*, 2016 WL 1162199 at *6 (dismissal of declaratory judgment claim proper when all underlying substantive claims are subject to dismissal).

## IV.   Conclusion and Recommendation

Based on the foregoing, and the conclusion that there is no genuine issue of material fact for trial and that Defendants are entitled to summary judgment on all of the Leanders' claims, the Magistrate Judge

RECOMMENDS that Defendants' Motion for Summary Judgment (Document No. 13) be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file

written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this __27th__ day of March, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

14